JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Tamika Johnson, Individually and as Administratrix of the Estates of Alita Johnson, Horace McCouellem and Haashim Johnson, Deceased

**(b)** County of Residence of First Listed Plaintiff    Philadelphia County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas A. Lynam, III, Esquire/Leonard G. Villari, Esquire
Villari, Lentz & Lynam, LLC, 1600 Market Street, Suite 1800
Philadelphia, PA 19103    P: (215) 568-1990

## DEFENDANTS

City of Philadelphia, Philadelphia Fire Department, Philadelphia Fire Commissioner Adam Thiel, Jane Doe Philadelphia Fire Department Operator and Jane Doe Philadelphia Fire Department Dispatcher

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
  Plaintiff
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
  Defendant
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Violation of 14th Amendment Rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   10/29/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TAMIKA JOHNSON, INDIVIDUALLY :
AND AS ADMINISTRATRIX OF THE :
ESTATES OF ALITA JOHNSON, :
HORACE MCCOUELLEM, AND :
HAASHIM JOHNSON, :
840 Winton Street :
Philadelphia, PA 19148, :
                             :
         Plaintiff, :
                             :
       v. :      Civil Action No.:
                             :
CITY OF PHILADELPHIA :
One Parkway Building, 17th Floor :
1515 Arch Street :
Philadelphia, PA 19102 :
     and :
PHILADELPHIA FIRE DEPARTMENT :
240 Spring Garden Street :
Philadelphia, PA 19123 :
     and :
PHILADELPHIA FIRE COMMISSIONER :
ADAM THIEL :
240 Spring Garden Street :
Philadelphia, PA 19123 :
     and :
JANE DOE PHILADELPHIA FIRE :
DEPARTMENT OPERATOR :
240 Spring Garden Street :
Philadelphia, PA 19123 :
     and :
JANE DOE PHILADELPHIA FIRE :
DEPARTMENT DISPATCHER :
240 Spring Garden Street :
Philadelphia, PA 19123, :
                             :
         Defendants. :

---

## **COMPLAINT**

    Plaintiff, by and through undersigned counsel, Villari, Lentz & Lynam, LLC, files this

Civil Action Complaint and avers as follows:

1

## PARTIES

### Plaintiff

1.      Tamika Johnson ("Plaintiff") is an adult individual residing at 840 Winton Street, in the city and county of Philadelphia, Pennsylvania 19148.

2.      Plaintiff's sister, Alita Johnson ("Alita"), died at age twenty-five (25) in a house fire that ignited on March 20, 2018.

3.      Alita's three-year-old son, Haashim Johnson ("Haashim"), died in the fire with his mother.

4.      Horace McCouellem, who is Plaintiff's father and Alita's stepfather, also died in the fire at age sixty-three (63).

5.      Plaintiff is Administratrix of the Estates of Alita, Haashim, and Mr. McCouellem, who resided together on the 3rd floor unit of a row home located at 1855 N. 21st Street, in the city and county of Philadelphia, Pennsylvania 19121.

### Defendants

6.      Defendant City of Philadelphia ("City") is a municipal corporation that is organized under the laws of the Commonwealth of Pennsylvania.

7.      The City, operating through its Philadelphia Fire Department ("PFD"), provides fire protection and emergency medical services to the City's residents.

8.      The PFD maintains its headquarters at 240 Spring Garden Street, Philadelphia, Pennsylvania 19123.

9.      Defendant Adam Thiel ("Commissioner Thiel") is the City's Fire Commissioner.

10.      Commissioner Thiel maintains a principal place of business at 240 Spring Garden Street, Philadelphia, Pennsylvania 19123.

11.     Defendant Jane Doe Operator ("Jane Doe Operator") is an emergency call operator employed by the City's PFD.

12.     Defendant Jane Doe Operator maintains a principal place of business at 240 Spring Garden Street, Philadelphia, Pennsylvania 19123.

13.     As of the filing of this Complaint, Plaintiff has been unable to obtain the name of Defendant Jane Doe Operator.

14.     Defendant Jane Doe Dispatcher ("Jane Doe Dispatcher") is an emergency call dispatcher employed by the City's PFD.

15.     Defendant Jane Doe Dispatcher maintains a principal place of business at 240 Spring Garden Street, Philadelphia, Pennsylvania 19123.

16.     As of the filing of this Complaint, Plaintiff has been unable to obtain the name of Defendant Jane Doe Dispatcher.

17.     At all times material to this action, the City acted through its employees, agents, ostensible agents, workmen and/or servants – including Commissioner Thiel, the PFD's Jane Doe Operator, the PFD's Jane Doe Dispatcher, and the PFD's Firefighters.

18.     The City is directly and vicariously liable for the conduct of its employees, agents, ostensible agents, workmen and/or servants – including Commissioner Thiel, the PFD's Jane Doe Operator, the PFD's Jane Doe Dispatcher, and the PFD's Firefighters.

## **JURISDICTION**

19.     Plaintiff brings claims under federal law pursuant to 42 U.S.C. § 1983, and this Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331.[1]

---

[1] Section 1983 states in pertinent part that:

20.     This Court has jurisdiction over Plaintiff's State-law claims (Survival and Wrongful Death Actions) pursuant to 28 U.S.C. §1367.

## VENUE

21.     Venue is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in Philadelphia County, which sits in the Eastern District of Pennsylvania.

## FACTS

22.     The City directs its residents to call 911 to report emergencies.

23.     If an emergency involves a fire or requires emergency medical services, the 911 operator transfers the call to a PFD operator.

24.     The PFD operator then coordinates with a PFD dispatcher to send Firefighters and/or EMS personnel to the emergency scene.

25.     On the evening of March 20, 2018, Alita, 3-year-old Haashim, and Mr. McCouellem were inside the 3rd floor unit of 1855 North 21st Street.

26.     Around 11:30 p.m., a fire ignited inside the building's 2nd floor unit.

27.     At 11:38 p.m., Alita called 911 and reported the fire.

---

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress[.] See 42 U.S.C. § 1983.

Section 1331 states: The district court shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. See 28 U.S.C. § 1331.

28.     Because Alita reported a fire emergency, the 911 operator contacted the PFD's Jane Doe Operator.

29.     The 911 operator gave the Jane Doe Operator the wrong address for the fire, erroneously advising that Alita's call came from 1855 North 23rd Street rather than 1855 North 21st Street.

30.     The Jane Doe Operator provided this erroneous address to the PFD's Jane Doe Dispatcher, who dispatched Firefighters to the wrong location and thus delayed their response time.

31.     The Jane Doe Dispatcher also advised the Firefighters, who were then going to the wrong address, that she was getting reports concerning "third floor rear" of the burning building.

32.     At 11:40 p.m., Alita's 911 call was transferred directly to the Jane Doe Operator.[2]

33.     Alita repeated to the Jane Doe Operator that a fire ignited in her building on North 21st Street (not North 23rd Street), and that Alita, her 3-year-old son, and her stepfather were inside a 3rd floor room at the rear of the premises.

34.     The Jane Doe Operator instructed Alita to shut the rear room's door, to open the window, to place a towel at the bottom of the door, and to "stay calm" because rescuers would arrive shortly.

35.     The Jane Doe Operator also relayed the correct address to the Jane Doe Dispatcher, who rerouted the Firefighters to Alita's home but never informed them that Alita, her

---

[2] The audio of Alita's phone call with the Jane Doe Operator has been provided to Plaintiff's counsel.  The radio calls among the PFD's personnel who responded to the fire have also been provided to Plaintiff's counsel.

3-year-old son, and her stepfather were waiting for rescuers in the rear room of the property's 3rd floor.

36.     At 11:42 p.m., Alita confirmed that she and her family had followed the Jane Doe Operator's instructions and closed themselves inside the 3rd floor's rear room.

37.     Alita specifically confirmed to the Jane Doe Operator that she and her family were on the 3rd floor "all the way in the back" of the house.

38.     Alita remained on the phone with the Jane Doe Operator while multiple Firefighter units, who were equipped with ladder trucks, arrived at the residence between 11:42 p.m. and 11:44 p.m.

39.     However, neither the Jane Doe Operator nor the Jane Doe Dispatcher advised the Firefighters that Alita and her family were on the 3rd floor rear of the home, waiting for the Firefighters to rescue them.

40.     Relying on the Jane Doe Operator's assurances that Firefighters were coming to their rescue, Alita and her family forwent attempting to escape the burning building by other means – *e.g.*, via another rear window that opened onto a flat, walkable roof [3]– and they remained inside the rear room as instructed by the Operator.

41.     With her 3-year-old son terrified and crying beside her, Alita continued pleading for assistance from the Jane Doe Operator who had assured that rescuers were on their way.

42.     Upon their arrival, Firefighters reached the property's 2nd floor via interior stairs and the 2nd floor windows.

---

[3] There was a rear window on the 3rd floor that opened onto the second floor's extended flat roof, which remained intact notwithstanding the fire.

43.     Firefighters then fought the fire on the 2nd floor and searched for survivors.[4]

44.     Meanwhile, at 11:48 p.m., Alita's call with the Jane Doe Operator had disconnected.

45.     After controlling the fire on the 2nd floor and ensuring that this unit was "clear" of inhabitants, Firefighters navigated to the 3rd floor unit where the Jane Doe Operator had told Alita to remain.

46.     Firefighters initially gained access to the 3rd floor unit through the 3rd floor windows and the interior stairs of the property.

47.     Although the Jane Doe Operator and Jane Doe Dispatcher both knew that Alita and her family were on the 3rd floor awaiting rescue from Firefighters, neither the Operator nor the Dispatcher informed the Firefighters of Alita's existence, location, or need of rescue.

48.     Around 12:00 a.m., after Firefighters had already reached the 3rd floor unit, the interior steps to that floor collapsed.

49.     At this point there were four Firefighters on the 3rd floor.

50.     By 12:04 a.m., there were exterior ladders placed at the front and rear windows of the third floor.

51.     Contemporaneous video shows that Firefighters had access to the 3rd floor's front room window via ladder, and indeed had been combatting the fire from this location.

52.     At 12:07 a.m., Firefighters reported the presence of a portable ladder on the interior of the building from the second to third floor.

---

[4] Firefighters discovered that one individual had leaped to his death from a 2nd floor window. The body was found in the breezeway of the premises.

53.    At 12:14 a.m. the Firefighters on the third floor reported that the fire had been "knocked down".

54.    At 12:14 a.m. Firefighters asked "Command" whether they should withdraw from the third floor since the fire had been extinguished.

55.    After first inquiring whether there was any reason to remain on the third floor, "Command" gave the order to "pull everyone out".

56.    At 12:19 a.m. "Command" reported to "Communications" that the fire was under control.

57.    Alita, Haashim, and Mr. McCouellem remained undiscovered on the 3rd floor near a window, but the Firefighters made no effort to rescue them because neither the Jane Doe Operator nor the Jane Doe Dispatcher had informed the Firefighters of the decedent's predicament.

58.    Even after the Firefighters controlled the fire and completely vacated the premises, neither the Jane Doe Operator nor the Jane Doe Dispatcher informed anyone that the decedents had been waiting on the 3rd floor for rescuers.

59.    Not until **three** days after the fire, and only after the decedents' family had repeatedly called the PFD in search of their missing family members, were the decedents' intact and essentially unburned bodies discovered by PFD personnel inside a bathroom on the 3rd floor.

60.    Each decedent's cause of death was smoke inhalation.

61.    In other words, the decedents died not from actual physical contact with the fire (*i.e.*, burning).  Rather, the decedents died from being excessively exposed to the smoke while awaiting Firefighters who were never even informed of the decedents' existence or location.

62.    After the decedents' bodies were discovered, Commissioner Thiel represented to

the decedents' surviving family that Firefighters had been unable to access the 3rd floor unit during the fire, and thus they could not have saved the decedents from their ultimately fatal exposure to smoke.

63.     Commissioner Thiel's representations were false.

64.     During the fire there were no less than four Firefighters on the same floor as the decedents (*i.e.*, the 3rd floor), and the PFD had mounted ladders against a 3rd floor windows that opened into the same area where the decedents ultimately died from inhaling smoke.

## COUNT I
## DECEDENTS' ESTATES v. JANE DOE OPERATOR
## VIOLATION OF CIVIL RIGHTS UNDER FOURTEENTH AMENDMENT
## STATE-CREATED DANGER

65.     Plaintiff incorporates by reference the averments contained in paragraphs one (1) through sixty-four (64) as though they are fully set forth herein.

66.     The City instructs its residents to seek emergency rescue services from the PFD.

67.     In this case, acting under color of State law, the PFD's Jane Doe Operator violated the decedents' substantive due process rights by a combination of directing them to close themselves inside the burning building's 3rd floor rear room, assuring them that Firefighters were coming to their rescue, but then failing inexplicably to inform the Firefighters of the decedents' existence, location, or need of rescue.

68.     The Jane Doe Operator's failure to inform the Firefighters of the decedents' existence, location, and need of rescue had directly and foreseeably enhanced the decedents' risks of dying from the fire.

69.     Had the Jane Doe Operator executed her duty to inform the Firefighters of the information provided by Alita, the Firefighters inside the building's 3rd floor could have rescued the decedents before the Firefighters themselves safely exited the building.

70.     Had the Jane Doe Operator executed her duty to inform the Firefighters that the decedents were waiting on the 3rd floor to be rescued, the Firefighters would not have erroneously concluded that there was nobody to rescue on that floor.

71.     Had the Jane Doe Operator **not** instructed the decedents to close themselves inside the 3rd floor's rear room, and **not** induced the decedents to rely on her repeated assurances that rescuers were on their way, the decedents could have saved themselves by attempting other options for escaping the fire – *e.g.*, via another rear window that opened onto a flat, walkable roof.

72.     The Jane Doe Operator's failure to inform the Firefighters that the decedents were awaiting the Firefighters' emergency assistance manifests a willful disregard for the decedents' wellbeing.

73.     The Jane Doe Operator's willful disregard for the decedents' livelihood is evidenced by the fact that even after the Firefighters controlled the fire and completely vacated the premises, the Operator never informed anyone that the decedents had been on the 3rd floor waiting to be rescued.  That is to say, the Jane Doe Operator showed a complete indifference to the eventual plight of the people who frantically pleaded with the Operator for emergency assistance.

74.     Not until **three** days after the fire, and only after the decedents' family had repeatedly called the PFD in search of their missing family members, were the decedents' intact and essentially unburned bodies discovered by PFD personnel inside the bathroom of the 3rd floor's front room.

75.     The Jane Doe Operator's affirmative instructions to remain inside the 3rd floor's rear room to await rescuers whom the Operator never told of the decedents' existence or

location, placed the decedents at a greater risk of death than would have existed had the Jane Doe Operator **not** instructed the decedents to remain in place and await the uninformed rescuers.

76.    The City's Jane Doe Operator therefore violated the decedents' substantive due process rights by **enhancing** the danger to which the decedents were exposed, and by rendering them more vulnerable to dying from the fire.

WHEREFORE, Plaintiff, as Administratrix of the Estates of Alita Johnson, Haashim Johnson, and Horace McCouellem, demands judgment and damages against the City's Jane Doe Operator in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs.

## COUNT II
## DECEDENTS' ESTATES v. JANE DOE DISPATCHER
## VIOLATION OF CIVIL RIGHTS UNDER FOURTEENTH AMENDMENT
## STATE-CREATED DANGER

77.    Plaintiff incorporates by reference the averments contained in paragraphs one (1) through seventy-six (76) as though they are fully set forth herein.

78.    The City instructs its residents to seek emergency rescue services from the PFD.

79.    In this case, acting under color of State law, the PFD's Jane Doe Dispatcher violated the decedents' substantive due process rights by failing inexplicably to inform the Firefighters of the decedents' existence, location, or need of rescue on the 3rd floor of the burning building.

80.    The Jane Doe Dispatcher's failure to inform the Firefighters of the decedents' existence, location, and need of rescue had directly and foreseeably enhanced the decedents' risks of dying from the fire.

81.    Had the Jane Doe Dispatcher executed her duty to inform the Firefighters of the information in her possession – *i.e.*, that people on the 3rd floor rear of the property awaited

11

emergency assistance – the Firefighters inside the building's 3rd floor could have rescued the decedents before the Firefighters themselves safely exited the building.

82.    Had the Jane Doe Dispatcher executed her duty to inform the Firefighters that the decedents were waiting on the 3rd floor to be rescued, the Firefighters would not have erroneously concluded that there was nobody to rescue on that floor.

83.    The Jane Doe Dispatcher's failure to inform the Firefighters that the decedents were awaiting their emergency assistance manifests a willful disregard for the decedents' wellbeing.

84.    The Jane Doe Dispatcher's willful disregard for the decedents' livelihood is evidenced by the fact that even after the Firefighters controlled the fire and completely vacated the premises, the Dispatcher never informed anyone that the decedents had been on the 3rd floor waiting to be rescued.  The Jane Doe Dispatcher showed a complete indifference to the eventual plight of the people whom she knew had been waiting to be rescued by the Firefighters whom she had dispatched to the scene.

85.    Not until **three** days after the fire, and only after the decedents' family had repeatedly called the PFD in search of their missing family members, were the decedents' intact and essentially unburned bodies discovered by PFD personnel inside the bathroom of the 3rd floor's front room.

86.    The Jane Doe Dispatcher's failure to notify the Firefighters of the information in her possession – *i.e.*, that people on the 3rd floor rear of the property awaited rescue – placed the decedents at a greater risk of death than would have existed had the decedents never sought emergency assistance from the PFD.

87.    The City's Jane Doe Dispatcher therefore violated the decedents' substantive due

process rights by **enhancing** the danger to which the decedents were exposed, and by rendering

them more vulnerable to dying from the fire.

WHEREFORE, Plaintiff, as Administratrix of the Estates of Alita Johnson, Haashim

Johnson, and Horace McCouellem, demands judgment and damages against the City's Jane Doe

Dispatcher in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of

interest and costs.

**COUNT III**
**DECEDENTS' ESTATES v. CITY OF PHILADELPHIA**
**VIOLATION OF CIVIL RIGHTS UNDER FOURTEENTH AMENDMENT**
***MONELL* LIABILITY**

88.    Plaintiff incorporates by reference the averments contained in paragraphs one (1)

through eighty-seven (87) as though they are fully set forth herein.

89.    The City is subject to liability when its employees, by taking action pursuant to a

municipal policy or custom, cause a constitutional violation.

90.    The City also is subject to liability when its failure to train its employees causes

the violation of a person's substantive due process rights. See e.g., Kneipp by Cusack v. Tedder,

95 F.3d 1199, 1212 (3d Cir. 1996) (noting that "section 1983 liability may attach to a

municipality if it had a policy or custom of failing to train its employees and that failure caused

the underlying constitutional violation[.]"); Schieber v. City of Philadelphia, 1999 U.S. Dist.

LEXIS 10368 (E.D. Pa. 1999) ("Liability for failure to train and supervise attaches when: 1) the

training program and supervision were inadequate; 2) the City was deliberately indifferent to the

inadequacies; and 3) the inadequate training and supervision caused the injury.").

91.    The City directs its residents to call the City's emergency dispatch centers when

emergencies arise.

92.    The City's PFD operator and dispatcher handle emergency calls requesting fire

13

protection and/or emergency medical services.

93.    Based on the information provided by the PFD operator, the PFD's dispatcher sends Firefighters and/or EMS personnel to the location where rescue and/or medical services are required.

94.    As this case demonstrates, the City provides no guidelines, policies, or training to its PFD operator or dispatcher regarding the communication of vital information to the caller requiring emergency assistance, or to the Firefighters responding to the scene.

95.    The City's lack of guidelines, policies, and training caused the Jane Doe Operator and Jane Doe Dispatcher to fail to inform the Firefighters that the decedents were on the same floor of the burning building as the Firefighters, waiting to be rescued.

96.    The City's lack of guidelines, policies, and training caused the Jane Doe Operator to instruct the decedents to wait inside the 3rd floor's rear room for the arrival of Firefighters, without ensuring that the Firefighters even knew of the decedents' existence, location, and need of rescue.

97.    The City's lack of guidelines, policies, and training caused the Jane Doe Dispatcher to fail to advise the Firefighters of the critical information in her possession -- *i.e.*, that people on the 3rd floor rear of the property awaited the Firefighters' rescue.

98.    The City's lack of guidelines, policies, and training caused the Firefighters, who were on the same floor as the decedents, to fail to rescue the decedents before the Firefighters themselves safely exited the building.

99.    The City's failure to train its Jane Doe Operator and Jane Doe Dispatcher caused Firefighters to erroneously conclude that there was nobody to rescue inside the 3rd floor unit of the burning building.

100.    The City's lack of guidelines, policies, and training regarding the communication of vital information from PFD operators/dispatchers to Firefighters evinces a deliberate indifference to the citizens whom the City instructs to call the PFD for emergency assistance.

101.    At all times material hereto, the PFD's senior personnel, including Commissioner Thiel, were responsible for implementing policies and training to ensure that PFD operators/dispatchers communicate accurate and timely information to Firefighters responding to fire emergencies.

102.    At all times material hereto, the PFD's senior personnel, including Commissioner Thiel, knew about and acquiesced to the lack of guidelines, policies, and training protocols regarding the communication of vital information from PFD operators/dispatchers to Firefighters responding to fire emergencies.

103.    At all times material hereto, the PFD's senior personnel, including Commissioner Thiel, were deliberately indifferent to the inadequacies of their guidelines, policies, and training protocols regarding the communication of vital information from PFD operators/dispatchers to Firefighters responding to fire emergencies.

104.    The City's deliberate indifference – as manifested in its failure to implement guidelines or training for the transmission of vital information from PFD operators/dispatchers to Firefighters – directly enhanced the decedents' exposure to the fire and thereby violated the decedents' substantive due process rights under the Fourteenth Amendment.

WHEREFORE, Plaintiff, as Administratrix of the Estates of Alita Johnson, Haashim Johnson, and Horace McCouellem, demands judgment and damages against the City of Philadelphia in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interests and costs.

## COUNT IV
## DECEDENTS' ESTATES v. JANE DOE OPERATOR AND CITY OF PHILADELPHIA VIOLATION OF CIVIL RIGHTS UNDER FOURTEENTH AMENDMENT "SPECIAL RELATIONSHIP"

105.    Plaintiff incorporates by reference the averments contained in paragraphs one (1) through one hundred four (104) as though they are fully set forth herein.

106.    The City instructs its residents to seek emergency rescue services from the PFD.

107.    The PFD's operator is required to coordinate with the PFD's dispatcher to send Firefighters and/or EMS personnel to the location where emergency services are required.

108.    In compliance with the City's instructions, Alita called 911 to report the house fire, and the 911 operator transferred the call to the PFD.

109.    In compliance with the City's instructions, Alita informed the PFD's Jane Doe Operator of the fire and advised that Alita, Haashim, and Mr. McCouellem were inside a rear room on the 3rd floor of the building.

110.    In compliance with the Jane Doe Operator's instructions, Alita shut the room's door, opened the window, placed a towel at the bottom of the door, and awaited rescuers whom the Operator assured were coming.

111.    Relying on the Jane Doe Operator's instructions, Alita and her family forwent attempting to escape the premises by other viable means – *e.g.*, via another rear window that opened onto a flat, walkable roof – and they remained in the rear room as instructed by the Operator.

112.    The City's instructions to seek emergency rescue services from the City's PFD, coupled with the Jane Doe Operator's instructions to essentially barricade inside the 3rd floor's rear room, effectively curtailed the decedents' freedom to act and thus created a "special relationship" between the City and the decedents.

113.    Pursuant to that "special relationship," the City's Jane Doe Operator owed an affirmative duty to ensure that her colleague Firefighters were provided the critical information relayed by Alita – *i.e.*, that Alita, her 3-year-old son, and her stepfather were awaiting the Firefighters' rescue in the 3rd floor's rear room.

114.    By failing to inform the Firefighters of the decedents' existence, location, and need of life-saving assistance, the City and its Operator violated the decedents' substantive due process rights by enhancing the danger to which the decedents were exposed, and by rendering them more vulnerable to dying from the fire.

WHEREFORE, Plaintiff, as Administratrix of the Estates of Alita Johnson, Haashim Johnson, and Horace McCouellem, demands judgment and damages against the City and its Jane Doe Operator in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs.

### COUNT V
### DECEDENTS' ESTATES v. COMMISSIONER ADAM THIEL
### VIOLATION OF CIVIL RIGHTS
### EQUAL PROTECTION UNDER THE LAW

115.    Plaintiff incorporates by reference the averments contained in paragraphs one (1) through one hundred fourteen (114) as though they are fully set forth herein.

116.    The decedents died from smoke inhalation.

117.    After the decedents' bodies were discovered, Commissioner Thiel represented to the decedents' surviving family that Firefighters had been unable to access the 3rd floor unit during the fire, and thus they could not have rescued the decedents from this floor.

118.    Commissioner Thiel's representations were false.

119.    The PFD's radio calls confirm that at least four firefighters were inside the 3rd floor unit during the fire.

120.    Contemporaneous video also shows that Firefighters accessed the 3rd floor's front window via a ladder, and indeed had been combatting the fire from this location.

121.    Upon erroneously concluding that there was no reason to remain inside the 3rd floor unit – *i.e.*, that nobody was there to rescue – the Firefighters extricated themselves from the premises.

122.    Since Commissioner Thiel undoubtedly was aware of the above facts, Plaintiff alleges that Commissioner Thiel deliberately misrepresented the Firefighters' purported inability to rescue the decedents.

123.    Plaintiff alleges that Commissioner Thiel misrepresented the Firefighters' purported inability to rescue the decedents in order to deter Plaintiff from seeking legal redress for the decedents' preventable deaths.

124.    By deliberately misrepresenting the PFD's rescue efforts, Commissioner Thiel sought to deny the decedents' legal redress for their preventable deaths and thus to deny them equal protection under the law.

WHEREFORE, Plaintiff, as Administratrix of the Estates of Alita Johnson, Haashim Johnson, and Horace McCouellem, demands judgment and damages against Commissioner Thiel in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interests and costs.

## COUNT VI
## SURVIVAL ACTIONS
## DECEDENTS' ESTATES v. CITY OF PHILADELPHIA

125.    Plaintiff incorporates by reference the averments contained in paragraphs one (1) through one hundred twenty-four (124) as though they are fully set forth herein.

126.    Plaintiff, as Administratrix of the Estates of Alita Johnson, Haashim Johnson, and Horace McCouellem, asserts Survival Actions pursuant to 42 Pa. C.S. § 8302.

127.    At all times material hereto, the residential row home at 1855 N. 21st Street was owned by Granite Hill Properties, LLC ("Granite Hill") and Granite Hill's principal officer/member, Tyrone Duren ("Mr. Duren").

128.    The property was a single-family, three-story row home.

129.    Although the property was not zoned or licensed as a multi-family dwelling or rooming/boarding house, Granite Hill and Mr. Duren illegally rented the property to multiple separate families and tenants at once, with each family or tenant(s) occupying a separate floor.

130.    In 2014, the City's Department of Licenses and Inspections ("L&I") sued Granite Hill and Mr. Duren for illegally operating the property as a boarding home.[5]

131.    At the time, the property contained no functioning smoke detectors or fire escapes.

132.    Pursuant to the City's lawsuit, Granite Hill and Mr. Duren agreed to vacate the property.

133.    After compelling Mr. Duren and Granite Hill to vacate the property, the City became responsible for the care, custody and control of the supposedly vacant property.

134.    The City, then on notice of the property's fire hazards and lack of proper licenses, was responsible for ensuring that nobody resumed occupancy of the vacant, hazardous property.

---

[5] Mr. Duren, who is former agent for the Department of Homeland Security, has an extensive civil and criminal history.  Among his many ongoing legal matters, Mr. Duren faces criminal charges in California for allegedly stealing money from drug traffickers along the Mexican border and then laundering that money through his real estate holdings.

135.    After taking responsibility for the property, the City neglected to inspect the building to ensure that nobody occupied the hazardous premises.

136.    After taking responsibility for the property, the City neglected to barricade, lock, or otherwise prevent persons from occupying the hazardous premises.

137.    After taking responsibility for the property, the City neglected to remedy any of the property's known fire hazards, including its lack of functioning smoke detectors and fire escapes.

138.    After taking responsibility for the property, the City failed to prevent Mr. Duren and Granite Hill to resume their illegal use of the property as a boardinghouse.

139.    As a direct and proximate result of the City's negligent care and control over the hazardous property, which the City ordered to be vacated, Mr. Duren and Granite Hill illegally rented rooms to multiple tenants.

140.    As a direct and proximate result of the City's failure to prevent Mr. Duren's and Granite Hill's illegal use of the property, the decedents resided in a building that lacked functioning smoke detectors and fire escapes.

141.    As the direct and proximate result of the property's lack of functioning smoke detectors, the decedents were not alerted of the fire in time to safely escape.

142.    As a direct and proximate result of the property's lack of fire escapes, the decedents were unable to emergently exit the property once it was engulfed in flames.

143.    As a direct and proximate result of the known fire hazards in the property – the occupancy of which the City controlled – the decedents died in the house fire that occurred on March 20, 2018.

WHEREFORE, Plaintiff, as Administratrix of the Estates of Alita Johnson, Haashim Johnson, and Horace McCouellem, demands judgment and damages against the City of Philadelphia in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interests and costs.

**COUNT VII**
**WRONGFUL DEATH**
**TAMIKA JOHNSON v. CITY OF PHILADELPHIA**

144.    Plaintiff incorporates by reference the averments contained in paragraphs one (1) through one hundred forty-three (143) as though they are fully set forth herein.

145.    Plaintiff, individually, brings this Count, a Wrongful Death Action, pursuant to 42 Pa.C.S. § 8301, on her own behalf regarding the death of her Father, Horace McCouellem.

146.    As a direct and proximate result of the negligence and carelessness of Defendants, as specifically enumerated above and incorporated by reference herein, acting by and through their duly authorized agents, ostensible agents, servants, work persons and/or employees, Plaintiff's decedent, Horace McCouellem, was caused to lose his life.

147.    As a direct and proximate result of Defendants' actions and omissions, as specifically enumerated above and incorporated by reference herein, the lawful beneficiary was caused to lose, and hereby make claim for, *inter alia*, the pecuniary contributions she could have expected to receive from the decedent; the pecuniary value of the services, society and comfort of the decedent; the tutelage of her father; the pecuniary value of the fringe and other benefits to the decedent which would have otherwise gone to the benefit of the beneficiary; and the reasonable and necessary medical, funeral, burial and administration expenses.

WHEREFORE, Plaintiff, demands judgment and damages against the City of Philadelphia in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interests and costs.

**VILLARI, LENTZ & LYNAM, LLC**

BY: _____
THOMAS A. LYNAM, III, ESQUIRE
LEONARD G. VILLARI, ESQUIRE
Attorney I.D. Nos: 83817 / 68844
1600 Market Street, Ste. 1800
Philadelphia, PA 19103
Phone: 215-568-1990
Fax: 215-568-9920
Emails: tlynam@vll-law.com / lgvillari@aol.com

Dated: October 29, 2018